405 F.2d 270
 Robert J. SCHWARTZ, Plaintiff,
v.
COMPAGNIE GENERAL TRANSATLANTIQUE, Defendant and Third-Party Plaintiff-Appellant,
v.
The UNITED STATES of America, DEPARTMENT OF JUSTICE, BUREAU OF IMMIGRATION AND NATURALIZATION SERVICE, Third-Party Defendant-Appellee.
 No. 162.
 Docket 32648.
 United States Court of Appeals Second Circuit.
 Argued November 6, 1968.
 Decided December 11, 1968.
 
 1
 COPYRIGHT MATERIAL OMITTED Thomas H. Healy, New York City (Hill, Betts, Yamaoka, Freehill & Longcope, New York City, on the brief), for defendant and third-party plaintiff-appellant.
 
 
 2
 Peter Martin Klein, Atty., Admiralty and Shipping Section, Dept. of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., Robert M. Morgenthau, U. S. Atty., Louis E. Greco, Atty. in Charge, New York Office, Admiralty and Shipping Section, Dept. of Justice, on the brief), for third-party defendant-appellee.
 
 
 3
 Before WATERMAN and FEINBERG, Circuit Judges, and LEVET, District Judge.*
 
 LEVET, District Judge:
 
 4
 Compagnie General Transatlantique (hereinafter "French Line") has appealed from a judgment by Metzner, D. J., dismissing upon motion a third party claim of the French Line against the third-party defendant, United States of America. We affirm.
 
 THE PRIMARY ACTION
 
 5
 The primary action is a claim made by plaintiff, Robert Schwartz, an Immigration inspector employed by the United States, who alleged that on October 28, 1964 he suffered injuries while aboard the SS France, owned by the French Line, in New York Harbor during the course of his official duties. Schwartz alleges that while working in the main lounge clearing passengers for admission into the United States, he was caused to trip and fall by reason of the ship's maintaining its piano platform and the carpeting thereof in a dangerous and defective condition, etc. The claim is based upon negligence.
 
 
 6
 THE THIRD PARTY COMPLAINT AGAINST THE UNITED STATES
 
 
 7
 A third party complaint against the United States was filed by the French Line on May 8, 1967. The French Line alleged jurisdiction based upon the provisions of Title 28 U.S.C.A. §§ 1346(b) and 2671 et seq. and Title 46 U.S.C.A. § 781 et seq. The gist of that complaint is that plaintiff boarded defendant's vessel in the exercise of his official functions; that thereby his employer, the United States, agreed and was obligated by the operation of law to conduct its immigration inspection in a reasonable and proper manner, exercising all supervision and maintaining all equipment in a proper manner; and that the United States warranted that the personnel who boarded defendant's vessel would perform their work in a reasonable and workmanlike manner. The complaint further alleged that the injury to Schwartz was without fault or negligence on the part of the French Line and that if Schwartz sustained injuries as alleged in his complaint these were caused by the "active negligence and breach of third-party defendant," requiring indemnity to the French Line.
 
 THE MOTION BY THE UNITED STATES
 
 8
 The United States moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the third party complaint. Prior to this motion, the French Line and the United States stipulated that the third party complaint seeks recovery "solely upon an implied contract of workmanlike performance arising out of the status existing" between them on the day the accident happened. It is also noted that the stipulation above mentioned contained this further statement:
 
 
 9
 "The execution of this stipulation is without prejudice to the position of the United States of America that there was not any such implied contract and that there was not any status which gave rise to such an implied contract."
 
 
 10
 In its complaint against the United States, the French Line does not state the nature of the warranty; the complaint states neither what the United States was required to do nor what the United States failed or neglected to do. Although the third party complaint alleged that the third-party defendant, the United States, was "obligated by the operation of law to conduct its function in a reasonable and proper manner and to provide all supervision necessary for the reasonable conduct of its work" (Par. Sixth) and further asserted that if the plaintiff, Schwartz, sustained injuries through any fault other than his own it was caused by failure of the United States to perform its functions in a reasonable manner, etc. (Par. Tenth), not one word of specific fact to sustain these contentions was presented by the French Line.
 
 
 11
 The motion was made upon an affidavit of John J. McKeon, which set forth the official character of the acts in which Schwartz was engaged in the SS France, and further stated that "There was no contract between the Service [i. e., Immigration and Naturalization Service] and Compagnie General Transatlantique or SS France pertaining to the presence of Immigration Inspectors aboard the vessel." The French Line submitted no opposing affidavits.
 
 
 12
 The record on this appeal contains interrogatories by the United States addressed to the French Line and answers by the French Line; but these answers in this instance are not affidavits as required by Rule 56 of the Federal Rules of Civil Procedure. The answers are alleged on "information and belief" and contain these words: "This statement is a mere gratuity on third-party plaintiff's behalf. Further answers shall not be forthcoming * * *." The answers were not verified by the French Line. Such answers may not be considered in opposition to the motion of the United States for summary judgment.[1]
 
 
 13
 The affidavit submitted by the United States in support of its motion contained no factual statements as to the basis, or lack of basis, of the claim of Schwartz against the French Line. Neither party to this motion has sought judgment on any factual issue with regard to liability of the French Line to Schwartz, and no trial or verdict has yet been had upon the claim of Schwartz against the French Line. The French Line failed to present on the record any evidence indicating the existence of a genuine issue of material fact as to its claim against the United States. Appellant confines its argument to its contention that the complaint states a cause of action. The opinion of Judge Metzner clearly indicates that he dismissed the complaint because it did not state a cause of action.
 
 
 14
 Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment. "A motion for summary judgment may be made solely on the pleadings, when it is so made it is functionally the same as a motion to dismiss or a motion for judgment on the pleadings." 6 Moore's Federal Practice, ¶ 56.02[3], p. 2035. See Mercantile Nat'l Bank at Dallas v. Franklin Life Ins. Co., 248 F.2d 57 (5th Cir. 1957). Summary judgment procedure may be properly invoked for determination of a legal question. Agrashell, Inc. v. Hammons Products Co., 248 F.Supp. 258 (S. D.N.Y.), aff'd 352 F.2d 443 (2nd Cir. 1966).
 
 
 15
 Defendant may move for summary judgment at any time after a pleading stating a claim is served upon him provided it clearly appears that no valid claim against him exists. United States v. William S. Gray & Co., 59 F. Supp. 665 (S.D.N.Y.1945); Myers v. Cromwell, 267 F.Supp. 12 (D.Kansas 1967); Gifford v. Travelers' Protective Assn., 153 F.2d 209 (9th Cir. 1946). Hence, the motion of the third-party defendant was not premature.
 
 CONTENTIONS OF APPELLANT, FRENCH LINE
 
 16
 On this appeal the pertinent contentions of counsel for the French Line were:
 
 
 17
 (1) That the motion should have been denied since there is a question of fact concerning the "status" of the shipowner and the government;
 
 
 18
 (2) That an implied warranty of workmanlike service exists which does not depend upon a contractual relationship, does not require privity, and that the alleged warranty "has become a policy instrument used by the courts to allocate losses equitably."
 
 APPEALABILITY
 
 19
 The judgment entered upon this motion states, in the words of Rule 54 (b), that there is "no just reason for delay of entry of this judgment." However, the mere fact that a certificate has been issued does not necessarily indicate that the certificate was properly issued. See McNellis v. Merchants Nat'l Bank & Trust Co., 385 F.2d 916 (2nd Cir. 1967); Backus Plywood Corp. v. Commercial Decal, Inc., 317 F.2d 339 (2nd Cir.), cert. denied, 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963); Panichella v. Pennsylvania R. R., 252 F.2d 452 (3rd Cir. 1958).
 
 
 20
 Recently, this court dismissed an appeal from a judgment, holding that the trial court had abused its discretion in making a Rule 54(b) certification. Campbell v. Westmoreland Farm, Inc., 2nd Cir. 1968, 403 F.2d 939. In that case we said that "there must be some danger of hardship or injustice through delay which would be alleviated by immediate appeal." We also quoted with approval the warning of the Third Circuit that Rule 54(b) orders "should not be entered routinely or as a courtesy or accommodation to counsel. The power which this Rule confers upon the trial judge should be used only `in the infrequent harsh case' as an instrument for the improved administration of justice * * *." Panichella v. Pennsylvania R. R., 252 F.2d 452, 455 (3rd Cir. 1958).
 
 
 21
 The Campbell case may be distinguishable on its facts for a number of reasons; e. g., the dismissal of two of the plaintiffs' three causes of action there still left the same parties in the case, while here dismissal of the third party claim eliminated the government as a party; in Campbell, plaintiffs could not be sure, until the trial of its remaining claim, of the identity of the defendant in the dismissed claims. We are also aware that the emphasis in Campbell that a Rule 54(b) order should be entered only in the infrequent harsh case followed the order in this case. On balance, we do not feel justified in holding that there was an abuse of discretion in this case. However, we note that Rule 54(b) orders usually have the unfortunate effect of delaying the main action; e. g., this case is not presently, and has never been, on the trial calendar; a note of issue and statement of readiness was filed on June 8, 1967, but subsequently withdrawn after objection, June 26, 1967; note of issue was again filed June 20, 1968, but withdrawn by consent on October 4, 1968. We again emphasize that Rule 54(b) orders should not be entered routinely or as a courtesy to counsel and suggest that when such orders are granted, the trial judge marshal the competing considerations and state the ones considered to be most important.
 
 THE OPINION OF THE DISTRICT COURT
 
 22
 The District Judge in his opinion granting the motion for summary judgment and dismissing the action pointed out that the claim of the French Line is not founded in tort and that there was no contractual relationship between the French Line and the United States, whereas in cases where a warranty of good workmanship was implied the services concerned were to be rendered pursuant to a contract for the benefit of the vessel. The District Judge found that no warranty could be implied from the status existing between Schwartz and the French Line.
 
 THE IMPLIED WARRANTY CONTENTION
 
 23
 The doctrine of an implied warranty of workmanlike service, which is the sole ground urged for recovery of indemnity from the United States, is inapplicable to the present case. Even a liberal interpretation of Supreme Court decisions provides no support for that assertion. The doctrine is usually invoked by a vessel or shipowner to recover an indemnity from a stevedore or other independent expert which had control over, and performed, work which would traditionally have been done by employees of the vessel or owner. Italia Societa, etc. v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).
 
 
 24
 This warranty doctrine is one of several special rules developed to further a policy of both minimizing accidents to seamen and stevedores which arise out of the hazards of their shipboard occupation and compensating those workers who do fall victim to these accidents. Italia Societa, etc. v. Oregon Stevedoring Co., supra, 376 U.S. at 324, 84 S.Ct. 748. Even if this court were to construe the Italia Societa case to hold that one who undertakes to do a job for a shipowner and is not negligent in any respect nevertheless has an insurer's absolute liability to indemnify for liability to injured workers which the shipowner may incur, we would still not hold that the warranty doctrine can be invoked against the government in the case at bar.
 
 
 25
 In every case advanced by the French Line, the warranting indemnitor had undertaken to perform a business service upon which the indemnitee-owner had ultimately relied. Even if we were to read Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1954) to extend the coverage of the doctrine of seaworthiness to all classes of business visitors aboard the vessel who aid in the preparation of the voyage or further the business of the ship, enlargement of that doctrine to this plaintiff on the principal action is unjustified. Immigration inspection is a statutory function designed to protect the interests of the nation; we cannot agree that its object is to further the business aims of a shipowner where the statute specifically empowers inspectors to board and perform their duties without consent of the owner. The plaintiff was acting in a capacity sanctioned by statute regardless of whether any alleged informal arrangements with the shipowner were entered into by the government.
 
 
 26
 Such an interpretation of the Hawn case would be unwarranted. The Supreme Court seems to have limited the class of those who may avail themselves of the benefits of the seaworthiness doctrine to those doing work "traditionally performed by members of a ship's crew." United N. Y. and N. J. Sandy Hook Pilots' Assoc. v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1958). Clearly, such a standard excludes an Immigration inspector from pursuing remedies based upon a claim of unseaworthiness and that in turn bars the type of action asserted by the French Line.
 
 
 27
 Appellant also asks this court to apply the workmanlike service warranty doctrine beyond its traditional shipowner-stevedore relationship in the interest of implementing an "* * * expressed legal concept of allocation of loss to the interests whose functions involve such risks." French Line brief, p. 8. By way of support of this proposition, French Line cites Ira S. Bushey & Sons, Inc. v. United States of America, 398 F.2d 167 (2nd Cir. 1968). There is no reason to extend the warranty doctrine to non-contractual non-service relationships such as the instant case. Bushey, supra, was a tort action by a dock owner against the government for damages arising out of the negligence of one of its sailors in sinking a drydock to which a government vessel was attached. Contrary to appellant's contention, the court declined to base its decision on an allocation of resources analysis. Instead, it held the government liable on the equitable principle underlying the doctrine of respondeat superior that "* * * a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities." Bushey, supra at 171.
 
 
 28
 Bushey did not involve an indemnity or warranty suit. Though the government was a party, it was a defendant because it was a shipowner engaged in business dealings with plaintiff. In the present instance, the government is operating under a statutory duty with full power to send its Immigration inspectors aboard ships without formal or informal agreements or arrangements with the vessel's owner. 8 U.S.C.A. § 1357. The government can hardly be considered to be performing a service for the shipowner.
 
 
 29
 The courts have recognized that the doctrine of seaworthiness, which creates liability without fault, places an extremely heavy burden of liability on the shipowner. Indemnity is permitted the shipowner because his reliance upon an independent contractor frequently results in the shipowner's vicarious liability for injuries without fault. See DeGioia v. United States Lines Company, 304 F.2d 421 (2nd Cir. 1962).
 
 
 30
 Since any equitable considerations underlying the decision of courts to require indemnity by applying the implied warranty of workmanlike service are ultimately derived from a shipowner's liabilities under the seaworthiness guarantee, where there is no such possible liability, as in this case, there can be no requirement of indemnity under the warranty doctrine.
 
 
 31
 The fact that a shipowner may be found liable to plaintiff due to the ship's negligence is hardly an injustice per se requiring this court to invoke an artificial equitable doctrine of indemnity. The shipowner is obligated to pay plaintiff only if it was negligent and if, as a proximate result thereof, Schwartz suffered injuries; and since the doctrine of comparative negligence seems to apply, the French Line does not pay for the injuries insofar as they may have been caused by plaintiff's own negligence.
 
 
 
 Notes:
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 Although answers to interrogatories may be considered "so far as they are admissible under the rules of evidence," where such answers are not based upon personal knowledge, such answers have no probative force. State of Maryland for Use of Barresi v. Hatch, 198 F.Supp. 1 (D.Conn.1961). See also S & S Logging Co. v. Barker, 366 F.2d 617 (9th Cir. 1966); H. B. Zachry Company v. O'Brien, 378 F.2d 423 (10th Cir. 1967)