**WARREN BROTHERS, a Division of Ashland Oil Industries and Insurance Company of North America, Petitioners,**

v.

**Robert NELSON, Jr. and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 78–3407.

United States Court of Appeals, Sixth Circuit.

Argued July 8, 1980.

Decided Dec. 5, 1980.

manufacturing and paving. Warren Brothers operates a plant on Mud Island at the confluence of the Mississippi and Wolf Rivers at Memphis, Tennessee. Gravel used at the plant is delivered by barge and unloaded at Warren Brothers' dock facility, a floating platform on the Wolf River side of the Island, attached to the shore by cables, telephone poles, and a vehicular ramp. The gravel is unloaded by means of a crane located on the platform that drops the gravel into a large hopper on the platform. Trucks one at a time are backed over the ramp under the hopper. They are loaded with gravel and then return to the plant a short distance away, where the gravel is dumped in a pile next to the manufacturing facility. Drivers of the trucks do not leave the cabs of the trucks or assist in the actual loading.

Nelson had been working as a truck driver for Warren Brothers only five days. During the first four days on the job, he drove a truck loaded with asphalt from the plant to construction sites. On the fifth day, he was ordered to transport gravel unloaded from barges at the platform to the plant. In the afternoon, as he was driving his truck loaded with gravel down the ramp, the truck fell off the ramp and landed on its side in the water.

Warren Brothers made payments to Nelson according to the compensation law of the state of Tennessee. Alleging back injuries sustained from the accident, Nelson filed a claim for compensation with the United States Department of Labor. After a formal hearing, an administrative law judge found that Nelson was not an employee covered by the LHWCA. Upon appeal to the Department of Labor Benefits Review Board, the decision of the administrative law judge was reversed, and the case was remanded for determination of the extent of the injury and the wage earned by Nelson for the purpose of computing the amount of compensation. The administrative law judge then found that Nelson had sustained permanent and total disability as a result of the accident and fixed the amount of compensation. The Benefits Re-

Alexander W. Dann, Jr., Dann, Davis, Davis, Blackburn & Shields, Jeff Bloomfield, Memphis, Tenn., for petitioners.

Burch, Porter & Johnson, Memphis, Tenn., Joshua T. Gillelan, II, U. S. Dept. of Labor, Washington, D. C., for respondents.

Before EDWARDS, Chief Judge, and MERRITT and BOYCE F. MARTIN, Jr., Circuit Judges.

MERRITT, Circuit Judge.

The question presented is whether respondent, an injured truck driver, is entitled to compensation as an "employee" covered under § 2(3) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 902(3) (1978) ("Act" or "LHWCA"). The Department of Labor Benefits Review Board held that he is. We affirm.

I.

Nelson was employed by petitioner Warren Brothers, a company engaged in asphalt

view Board upheld this decision, and Warren Brothers appeals.

## II.

The Act was adopted by Congress in 1927 in response to several Supreme Court decisions holding that because of the exclusivity of the federal admiralty jurisdiction, state compensation systems could not cover injuries suffered by maritime workers at points seaward of the water's edge, referred to as the "Jensen line." *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920). The Act was originally perceived solely as supplemental to the coverage provided by the states; thus its coverage was limited to those disabilities arising from injuries occurring "upon the navigable waters of the United States." Longshoremen's and Harbor Workers' Act of 1927, ch. 509, § 3(a), 44 Stat. 1426. The Supreme Court noted the inequities that arose from the arbitrary nature of the use of the "Jensen line" to determine whether state or federal compensation law governs a given disability case. Nonetheless, the Court stated that abandonment of the Jensen line must be undertaken by Congress, not the judiciary. *See, e. g., Nacirema Operating Co. v. Johnson*, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969).

Congress addressed the problem in 1972. The old test that determined coverage solely by the "situs" of the injury was replaced by a two–part test. The situs part was expanded to provide compensation for

an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by

an employer in loading, unloading, repairing, or building a vessel).

33 U.S.C.A. § 903(a) (1978). The other portion of the test is based upon status; to be covered, a party must be an "employee," which is defined as

any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and ship wrecker. . . .

33 U.S.C.A. § 902(3). Both of these tests must be satisfied for a party to be eligible for compensation. *P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 72–74, 100 S.Ct. 328, 332–33, 62 L.Ed.2d 225 (1979). The dispute in the present case turns on whether Nelson satisfies the status test. The issue of the situs of the injury is not before us.

## III.

Although Congress failed to define the key terms used in the definition of "employee," such as "maritime employment" and "longshoring operations," the Committee Reports do present an example to clarify the types of waterfront activities that are and are not covered. S.Rep.1125, H.R.Rep. No.1441, 92d Cong., 2d Sess. (1972), *reprinted in* [1972] U.S.Code Cong. & Ad.News, pp. 4698, 4708.[1] In *Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), the Supreme Court discussed the Congressional intent evidenced by the Committee Report example.

The example clearly indicates an intent to cover those workers involved in the essential elements of unloading a vessel—taking cargo out of the hold, moving it away from the ship's side, and carrying it immediately to a storage or holding area. The example also makes it clear that

---

1. In pertinent part the Reports state,

    To take a typical example, cargo, whether in break bulk or containerized form, is typically unloaded from the ship and immediately transported to a storage or holding area on the pier, wharf, or terminal adjoining navigable waters. The employees who perform this work would be covered under the bill for injuries sustained by them over the navigable

    waters or on the adjoining land area. The Committee does not intend to cover employees who are not engaged in loading, unloading, repairing, or building a vessel, just because they are injured in an area adjoining navigable waters used for such activity. Thus, employees whose responsibility is only to pick up stored cargo for further trans–shipment would not be covered . . . .

persons who are on the situs but are not engaged in the overall process of loading and unloading vessels are not covered. Thus, employees such as truckdrivers, whose responsibility on the waterfront is essentially to pick up or deliver cargo unloaded from or destined for maritime transportation are not covered.

*Id.* at 266–67, 97 S.Ct. at 2358–59.

The issue here, then, is whether Nelson was involved in the unloading of a vessel or the "further trans–shipment" of cargo. We hold that Nelson's trucking of gravel from shipside to the storage pile adjacent to the factory was an integral part of the "overall process" of unloading the barges. The dumping of gravel from the barges into the hopper did not complete the unloading process. "Unloading" here requires two steps—from barge to hopper via crane and from hopper to stockpile via truck. The two steps form a unified process. *See* Decision of the Benefits Review Board in *Nelson v. Warren Brothers*, BRB No. 76–414 & 76–414A (Jan. 24, 1978).

Legal doctrine supports this factual determination. The argument that the temporary placement of the gravel in the hopper is an event that breaks the coverage of the LHWCA in effect resurrects the "point of rest" theory. That theory held that the coverage of federal compensation laws ceased at the seaward edge of the cargo's first point of rest on land. This interpretation has now been rejected by the Supreme Court under the 1972 Amendments. The Court found that use of the point of rest theory would violate the intent of Congress in enacting the 1972 Amendments. *Northeast Marine Terminal, supra*, 432 U.S. at 274–79, 97 S.Ct. at 2362–2365; *Pfeiffer, supra*, 100 S.Ct. at 333–34. The Court held that the process of unloading cargo should not be divided into arbitrary units according to the fortuitous placement of the goods on the dock.

The reasoning in *Pfeiffer* is applicable in the present case. Ford, one of the claimants in *Pfeiffer*, was a member of a warehousemen's union whose members were prohibited from engaging in longshoremen's

tasks such as moving cargo directly to or from a vessel. Ford was injured while securing onto railroad flat cars military equipment that already had been unloaded from ships. The equipment had been stored for a number of days and loaded onto the flat cars the day before his injury. The work of the second claimant, Bryant, a cotton header, was also restricted. Cotton headers may only load cotton moved within or between warehouses. They may not move cargo directly to or from ships. Bryant was injured while unloading bales of cotton that were being transported from one warehouse, where they were stored upon arrival, to another, where they would await loading onto vessels by longshoremen. The Supreme Court held that both men engaged in "maritime employment" for the purpose of the LHWCA.

> Both men engaged in the type of duties that longshoremen perform in transferring goods between ship and land transportation.... The only basis for distinguishing Bryant or Ford from longshoremen who otherwise would perform the same work is the point of rest theory. That is, longshoremen ... would have performed the work done by Bryant and Ford had the cargo moved without interruption between land and sea transportation....
>
> [T]he crucial factor is the nature of the activity to which a worker may be assigned.... A worker responsible for some portion of [the activity of moving cargo from a ship] is as much an integral part of the process of loading or unloading a ship as a person who participates in the entire process. We therefore hold that Ford and Bryant were engaged in maritime employment because they were engaged in intermediate steps of moving cargo between ship and land transportation.

100 S.Ct. at 337 (footnotes omitted).

Nelson engaged in a similar activity in the present case. He was involved in the process of moving cargo from ship to storage. That he did so from the cab of a truck rather than from behind a wheelbarrow or

dolly is irrelevant for the purpose of the LHWCA. Under *Pfeiffer*, we may not except from coverage parties integrally involved in the unloading process.

A liberal construction of the Act requires this conclusion. The Supreme Court has found that the intent of Congress in enacting the 1972 Amendments was to expand coverage and "to apply a simple, uniform standard of coverage." *Pfeiffer, supra,* at 338. In *Northeast Marine Terminal, supra,* 432 U.S. at 268, 97 S.Ct. at 2359, the Court stated,

> The language of the 1972 Amendments is broad and suggests that we should take an expansive view of the extended coverage. Indeed, such a construction is appropriate for this remedial legislation. The Act "must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results." *Voris v. Eikel,* 346 U.S. 328, 333, 74 S.Ct. 88, 91, 98 L.Ed. 5 (1953).

Moreover, Nelson was engaged in waterfront work. An influential treatise has argued that the expansion of the Act's coverage ashore should be broadly read: "[T]he fact of waterfront employment should be taken to be a sufficient participation in the risk for the purpose of entitling the injured worker to claim LHCA benefits." G. Gilmore & C. Black, The Law of Admiralty 430 (2d ed. 1975). In fact, for the sake of uniformity and to avoid the judicial morass involved in determining whether each worker in any of "the almost infinite range of conditions of waterfront employment" is or is not involved in the process of unloading vessels, Gilmore and Black argue that the distinction based upon the unloading of vessels presented in the Congressional Reports should be rejected. *Id.* They advocate a uniform system of coverage for all waterfront employees.

Although the Supreme Court has not embraced the full extent of Gilmore and Black's argument for expanded coverage, the Court nonetheless has adopted a broad view of the LHWCA. It clearly covers workers in Nelson's position at the time of his injury. We therefore hold that Nelson is an employee for the purpose of the LHWCA. The decision of the Benefits Review Board is affirmed.