Samuel ARBEENY, and Director, Office of Workers' Compensation Programs, Petitioners,

v.

McROBERTS PROTECTIVE AGENCY and State Insurance Fund, Respondents.

Samuel ARBEENY, Petitioner,

v.

McROBERTS PROTECTIVE AGENCY and State Insurance Fund and Director, Office of Workers' Compensation Programs, Respondents.

Michael CONLON, Petitioner,

v.

McROBERTS PROTECTIVE AGENCY and State Insurance Fund and Director, Office of Workers' Compensation Programs, Respondents.

Nos. 568, 569, Dockets 80–4159, 80–4158.

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 1981.

Decided March 9, 1981.

Angelo C. Gucciardo, New York City (Israel, Adler, Ronca & Gucciardo, New York City, of counsel), for petitioner Conlon.

Irving Bushlow, Brooklyn, N. Y., for petitioner Arbeeny.

Catherine A. Giacona, Washington, D. C. (U. S. Dept. of Labor, Washington, D. C., Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol., Washington, D. C., of counsel), for Office of Workers' Compensation Programs.

Joseph F. Manes, Croton-on-Hudson, N. Y., for respondents McRoberts and State Ins. Fund.

Before MANSFIELD and MULLIGAN, Circuit Judges, and POLLACK,* District Judge.

MULLIGAN, Circuit Judge:

These petitions for review of an order of the Benefits Review Board, United States Department of Labor (Board) pose the question whether the petitioners Samuel Arbeeny and Michael Conlon were engaged in "maritime employment" within Section 2(3) of the Longshoremen's and Harbor Workers' Compensation Act (Act), 33 U.S.C. §§ 901–950, and are thus entitled to compensation for injuries suffered while working as pier guards on the Brooklyn Waterfront. A majority of the Board held that neither came within Section 2(3) because their duties "lacked the realistically significant relationship to maritime activities involving navigation and commerce over navigable waters."[1] We grant the individual

---

* United States District Judge for the Southern District of New York, sitting by designation.

1. The Board affirmed the decision of the administrative law judge that petitioner Arbeeny was excluded from coverage. Decision and Order,

Nos. 79–371 and 79–371A (June 23, 1980). It reversed another administrative law judge's order determining petitioner Conlon to be engaged in "maritime employment." Decision and Order, No. 79–399 (June 30, 1980). Our

claimants' petitions for review and set aside the orders of the Board.

Both petitioners were injured on waterfront piers in the course of their employment as pier guards. There is no question therefore that the "situs" requirement of 33 U.S.C. § 903(a) has been satisfied.[2] The issue is whether they were within the "status" requirement of the Act which by the 1972 amendments thereto extends coverage to "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker ...." Act § 2(3), 33 U.S.C. § 902(3).

At the time of their injuries both petitioners were employed by the respondent McRoberts Protective Agency. Their primary duty as pier guards was to insure the protection of cargo on the pier, dock and adjacent areas of marine terminals against theft, pilferage, vandalism and fire. While most of their surveillance activity was performed on the pier, at times petitioners were obliged to board vessels and position themselves on gangways, decks or in ships' hatches or holds. When valuable cargo was involved they were required to go below the deck to ensure the safety of the cargo. On occasion Arbeeny counted the cargo with a "checker" whose responsibility was to check and record the cargo removed from the hatch. Conlon in the year before his injury boarded docked ships almost nightly to deliver or obtain manifests or invoices which

in the latter case he then brought to stevedores or other dockside personnel responsible for checking shortages in the shipments. Conlon was also responsible for the inspection of mooring lines to determine whether the ship was securely moored to the dock.

It has been suggested that in order "to avoid the judicial morass involved in determining whether each worker in any of 'the almost infinite range of conditions of waterfront employment' is or is not involved in the process of unloading vessels," the Act should be construed to cover all waterfront employment. *Warren Bros. v. Nelson*, 635 F.2d 552, 556 (6th Cir. 1980) (quoting G. Gilmore & C. Black, The Law of Admiralty 430 (2d ed. 1975)). This court has rejected this interpretation, which would in effect read the "status" requirement out of the Act. *Pittston Stevedoring Corp. v. Dellaventura*, 544 F.2d 35, 56 (2d Cir. 1976), *aff'd sub nom. Northeast Marine Terminal Co., Inc. v. Caputo*, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977). Nonetheless the language of the 1972 Act "is broad and suggests that we should take an expansive view of the extended coverage. Indeed, such a construction is appropriate for this remedial legislation." *Northeast Marine Terminal Co. v. Caputo, supra*, 432 U.S. at 268, 97 S.Ct. at 2359.[3] It is also clear that the specific occupations mentioned in Section 2(3) do not exhaust its scope. *P. C. Pfeiffer Co., Inc. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979).

jurisdiction over these petitions is conferred by 33 U.S.C. § 921(c).

2. As broadened by the 1972 amendments to the Act, the so-called "situs" requirement covers any injury

"occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)."

Act § 3(a); 33 U.S.C. § 903(a). To be eligible for benefits a person must have been injured within this covered area and qualify as a maritime employee as defined by § 2(3) of the Act, 33 U.S.C. § 902(3). See *infra*.

3. Recent decisions in other circuits, notably the Fifth Circuit, emphasize the liberal scope of

coverage to be extended under this view of § 2(3). See *Warren Bros. v. Nelson*, 635 F.2d 552, 556 (6th Cir. 1980); *Boudloche v. Howard Trucking Co., Inc.*, 632 F.2d 1346, 1347 (5th Cir. 1980); *Trotti & Thompson v. Crawford*, 631 F.2d 1214, 1220-21 & n. 15 (5th Cir. 1980) (act of building pier furthers process of loading and unloading vessels and thus bears a significant relationship to "longshoring operations"); *Alabama Dry Dock & Shipbuilding Co. v. Kininess*, 554 F.2d 176, 178 (5th Cir.), cert. denied, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 190 (1977) (shipbuilding company employee's act of assembling crane to be used in shipbuilding process furthers maritime function of "shipbuilding" and thus constitutes maritime employment).

Longshoremen, ship repairmen, shipbuilders and shipbuilders comprise only "a part of the larger group of activities that make up 'maritime employment.'" *Id.* at 77 n. 7, 100 S.Ct. at 324 n. 7, see *Trotti & Thompson v. Crawford*, 631 F.2d 1214, 1220 (5th Cir. 1980).

The fact that the petitioners here were not job designated as longshoremen is certainly not dispositive of the issue. Neither is the fact that they did not physically load or off load cargo essential. The checker found covered by Section 2(3) in *Northeast Marine Terminal Co., Inc. v. Caputo, supra,* was assigned the task of checking and marking items of cargo as they were unloaded from a container. The Court found that "[t]his task is clearly an integral part of the unloading process . . . ." 432 U.S. at 271, 97 S.Ct. at 2361. Similarly here the activities of the petitioners were an integral part of the loading and unloading of cargo. Pilferage of cargo is endemic at piers. The loading and unloading process presents innumerable opportunities for theft. The major function of these petitioners was to protect against the loss of cargo which in our view unquestionably serves a maritime purpose—the safe transit of goods shipped by sea. The pervasive surveillance conducted by guards on the pier and occasionally on board ship is essential to the longshoring operation and is indeed required by the International Longshoremen's Association during the loading and the unloading process.[4]

Because we find both claimants to be engaged in maritime employment, we grant their petitions for review and set aside the orders of the Board.

---

**4.** The Board recognized that theft along the waterfront is a major problem plaguing the longshoring industry. We are not unmindful that this court *en passant* in *Pittston Stevedoring Corp. v. Dellaventura, supra,* referred to "guards" as an "unlongshoreman-like" position. 544 F.2d at 52. However, that panel was not faced with this factual situation involving petitioners whose duties were an inextricable part of the loading and unloading function. It may well be that some pier guards stationed at waterfront sites are not so involved. Since the Congress has not definitively addressed these situations in the statute, each case must be decided on its own merits.