Rafael TRIGUERO, Plaintiff,

v.

CONSOLIDATED RAIL
CORPORATION,
Defendant.

CONSOLIDATED RAIL CORPORA-
TION, Third-Party Plaintiff,

v.

UNIVERSAL MARITIME SERVICE
CORP., Third-Party Defendant.

No. 83 Civ. 5717 (RWS).

United States District Court,
S.D. New York.

May 2, 1984.

Zimmerman & Zimmerman, New York City, for plaintiff.

Walker & Bailey, New York City, for defendant; Lawrence R. Bailey, Jr., New York City, of counsel.

Grainger & Tesoriero, New York City, for third-party defendant; William E. Bell, New York City, of counsel.

OPINION

SWEET, District Judge.

Plaintiff Rafael Triguero ("Triguero") alleges that defendant and third-party plaintiff Consolidated Rail Corporation ("Conrail") is liable for the injuries that he sustained while working at Conrail's Portside Terminal ("the Terminal") in Elizabeth, New Jersey on January 5, 1982. Seeking contribution or contract-based indemnity, Conrail commenced a third-party action against Triguero's employer, Universal Maritime Service Corporation ("Universal"), a stevedore and terminal operator. Third-party defendants have moved to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed.R. Civ.P. 56. Inasmuch as both parties have submitted supporting affidavits, the motion will be treated as one for summary judg-

ment. Fed.R.Civ.P. 12(b)(6); *Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347, 1364 n. 2 (S.D.N.Y.1983). For the reasons discussed below, Universal's motion is granted in part.

The underlying events are in dispute. Triguero alleges that Conrail's failure to adequately maintain the Terminal caused the "hustler" [1] he was driving to overturn. Conrail characterizes Triguero's activities on the day in question as an overland trucking and delivery operation. Universal maintains that Triguero was transferring loaded containers from the Terminal to Universal's pier at Port Newark, where they were to be loaded onto an ocean-going vessel in accordance with the instructions of an unnamed consignee. There is no dispute that, as a self-insured employer, Universal paid benefits to Triguero in accordance with the Longshoremen's and Harbor Workers' Compensation Act ("the Act"), 33 U.S.C. § 901 *et seq.*

Conrail's claim for contribution in tort is predicated on Universal's alleged failure to train and supervise Triguero properly. In addition, although conceding that no express indemnification agreement was in force, Conrail contends that it is entitled to contractual indemnity based on Universal's alleged breach of an implied warranty of workmanlike service. In support of its motion, Universal argues that because Triguero is an employee within the meaning of § 902(3) of the Act and because he has received compensation, it is immune from a third-party action for contribution under the Act's exclusive liability provision, 33 U.S.C. § 905(a). In addition, Universal asserts that Conrail's claim for indemnity must fail because there was no contractual relationship between Universal and Conrail from which to imply a warranty. Thus, Universal's motion requires an analysis of two issues: 1) whether Triguero is an employee within the meaning of the Act, and 2) whether Universal owed Conrail an implied warranty of workmanlike performance.

An employer's liability for an employee's injury under the Act is exclusive:

**§ 905. Exclusiveness of liability**

(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death ....

Because an action for contribution is "on account of" the underlying injury, § 905(a), if applicable, would bar Conrail's claim for contribution. *Zapico v. Bucyrus-Erie Co.,* 579 F.2d 714 (2d Cir.1978); *Galimi v. Jetco, Inc.,* 514 F.2d 949 (2d Cir.1975). However, Universal can claim immunity from a third-party action for contribution only if Triguero qualifies as an employee under the Act. *McIntyre v. Farrell Lines,* 524 F.Supp. 99 (S.D.N.Y.1981); *Brkaric v. Star Iron & Steel Co.,* 409 F.Supp. 516 (E.D.N.Y.1976).

To prevail on its motion for summary judgment against Conrail's claim for contribution, Universal must establish the absence of a genuine issue of material fact as to whether Triguero qualifies as an employee. *National Life Ins. Co. v. Solomon,* 529 F.2d 59 (2d Cir.1975). The Act provides that for a person to be defined as an employee, his employment must satisfy two criteria: the "situs test" and the "status test." *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1978). An injured worker meets the situs test if his injury was incurred on "navigable waters of the United States (including any adjoining pier, wharf, drydock, terminal, building way, marine railway, or other area customarily used by an employer in loading, unloading, repairing or building a vessel)." § 903(a). Under the status test, a worker must be "...

---

**1.** A hustler is a truck-like vehicle used to transport large metal boxes with cargo inside, known as containers.

engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor worker including a ship repairman, shipbuilder, and shipbreaker ...." § 902 (3).

■ The current state of the record strongly suggests that Triguero is an employee. However, for reasons developed below, summary judgment may not properly be granted at this juncture. In an affidavit submitted by Conrail, Ron Sutherland ("Sutherland"), a Conrail claims agent, states that the area in which Triguero was injured does not adjoin navigable waters. It is not clear from Sutherland's affidavit whether he is referring to the specific area in which Triguero was injured or the terminal in its entirety. Inasmuch as the liberal nature of the situs test reflects Congress' intention to compensate workers legitimately involved in modern land-based longshoring operations,[2] it might suffice for Universal to demonstrate that the terminal, as a whole, adjoins or is close to navigable waters. *See Northeast Marine Terminal Co. v. Caputo, supra,* 432 U.S. at 279–81, 97 S.Ct. at 2365–66; *Texports Stevedore Co. v. Winchester,* 632 F.2d 504 (5th Cir. 1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981) (worker injured in a gear room located five blocks from the waterfront met situs test). The following factors may also be relevant to the determination of the situs test, but have not been addressed by the parties: 1) the suitability of the Terminal for the maritime activities referred to in the Act, 2) whether surrounding properties are devoted to maritime commerce; and 3) whether the site is as close to navigable water as is practicable.[3] *Brady-Hamilton Stevedore Co. v. Herron,* 568 F.2d 137, 141 (9th Cir.1978). Because Universal's affidavits do not adequately address the situs issue, there is an issue of fact as to whether Triguero was injured at a covered situs.

Even assuming *arguendo* that Triguero's injury occurred on a covered situs, there is a dispute concerning his status. The status test, as defined by the Court of Appeals for the Second Circuit, allows the "application of the [Act], ... to employee[s] whose activities ... bear a significant relationship to navigation or to commerce on navigable waters." *Fusco v. Perini North River Associates,* 622 F.2d 1111, 1113 (2d Cir.1980), *cert. denied,* 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 119 (1981). Coverage is afforded to a broad range of workers under this interpretation of the test. *See, e.g., Arbeeny v. McRoberts Protective Agency,* 642 F.2d 672 (2d Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 116 (1981) (security guards injured on pier while protecting a shipment were covered by the Act). Consequently, if, as Universal claims, Triguero was injured while transporting containers from the Terminal to Universal's pier, then Triguero might well be an employee, especially since the legislative history of the Act indicates that the advent of containers, in large part, motivated the expansion of the Act's coverage to work performed on land. *See* H.R. Rep. No. 1441, *supra.*

On the other hand, Conrail alleges that Triguero is a truckdriver who, at the time

---

2. Before the 1972 amendments expanded the coverage available under the Act, a worker's job function had relatively little effect on his eligibility for compensation. Any injury incurred on navigable waters was compensable as long as the injured worker was not a member of a narrowly defined excluded category and his employer had one or more maritime employees. *Pennsylvania R. Co. v. O'Rourke,* 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367 (1953). But the Act's coverage terminated at the water's edge and injuries that occurred on land were covered by state compensation acts. *Nacirema Operating Co. v. Johnson,* 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969). Finding that state compensation systems were inadequate, Congress extended the geographical area controlled by the Act. *See* H.R.Rep. No. 1441, 92d Cong. 2d Sess. (1972) *reprinted* in 3 U.S.Code Cong. & Admin. News 4698, 4707 (1972).

3. The court rejects Conrail's contention that Universal must demonstrate that the Terminal was customarily used to load and unload vessels, since an identical argument was rejected by the Supreme Court in *Northeast Marine Terminal Co. v. Caputo, supra,* 432 U.S. at 280–81, 97 S.Ct. at 2365–66.

of the accident, was preparing to make an overland delivery. If this description of Triguero's job function is correct, he would not qualify as an employee, since "employees such as truckdrivers, whose responsibility on the waterfront is essentially to pick up or deliver cargo unloaded from or destined for maritime transportation are not covered." *Northeast Marine Terminal Co. v. Caputo, supra,* 432 U.S. at 267, 97 S.Ct. at 2359. Conrail has not submitted any factual support for its allegation. The designation of Triguero as a "driver" on Conrail's accident reports is consistent with Universal's claim that Triguero is a "hustler-driver." Nonetheless, Triguero has yet to be deposed and Conrail has made a request for additional discovery pursuant to Fed.R.Civ.P. 56(f). Accordingly, given the sketchy, disputed record now before the court, summary judgment is denied on Conrail's claim for contribution.[4]

■ As to Conrail's claim for indemnity, in addition to a general prohibition against third-party actions for contribution, the Act expressly prohibits vessels from maintaining third-party actions for contract-based indemnity against compensation-paying employers. 33 U.S.C. § 905(b). But since Conrail is not a vessel, § 905(b) does not bar its claim for indemnity. *Zapico v. Bucyrus-Erie Co., supra,* 579 F.2d at 721. Moreover, § 905(a) is inapplicable because an action for contract-based indemnity is not "on account of" an employee's injury. *Id.* Accordingly, regardless of whether Triguero is an employee, Conrail can maintain a third-party claim for indemnity by establishing the existence of an implied indemnity agreement.

Since it is undisputed that there was no express indemnification agreement between Conrail and Universal,[5] Conrail "has the heavy burden of finding an implicit

agreement by the stevedore to indemnify it." *Id.* at 722. In the maritime context, the doctrine of implied warranty was created by the Supreme Court in *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), which held that a ship could seek indemnity from a stevedore based on a warranty of workmanlike performance arising from their contractual relationship:

> The shipowner ... holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedore operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a non-contractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service ....

*Id.* at 133–34, 76 S.Ct. at 237.

In addition to the contractual relationship between a stevedore and shipowner, equitable considerations contributed to the creation of *Ryan* indemnity. *See Schwartz v. Compagnie General TransAtlantique,* 405 F.2d 270 (2d Cir.1968). Prior to the 1972 amendments to the Act, shipowners were subject to strict liability for any injury occurring on an "unseaworthy" vessel, regardless of whether the unseaworthy condition was the cause of injury. Because the conditions giving rise to a shipowner's liability under the unseaworthiness doctrine were often caused by stevedores, courts thought it just that stevedores indemnify vessels in such cases. *See Seas*

---

**4.** Contrary to Universal's assertion, the fact that benefits have been paid to Triguero is not dispositive. Such a holding would mean that an employer could avoid liability by paying benefits to a worker irrespective of his eligibility.

**5.** It should be noted that Conrail does not claim to be an intended third-party beneficiary of any agreement between the vessel or consignee in question and Universal. Moreover, such an argument would be unavailing. *See Zapico v. Bucyrus-Erie Co., supra,* 579 F.2d at 722–23.

*Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).[6]

*Ryan* indemnity may be extended to non-vessels if there is a sufficient contractual relationship between the parties from which to imply a warranty. *See Zapico v. Bucyrus-Erie Co., supra.* However, where no contractual relationship exists, *Ryan* indemnity is not available. *See Zapico v. Bucyrus-Erie Co., supra; Schwartz v. Compagnie General Transatlantique, supra; Travis v. International Multi-Foods Corp.*, 464 F.Supp. 503 (W.D.N.Y. 1978).

In the instant case, Conrail has failed to submit evidence of a "relationship ... from which a covenant to indemnify could fairly be implied." *Zapico v. Bucyrus-Erie Co., supra,* 579 F.2d at 719. Unless Triguero can prove that Conrail's negligence caused his injury, Conrail cannot be held liable. Therefore, unlike the pre-1972 situation described above, there are no equitable considerations calling for the application of the implied warranty doctrine. *See Hillier v. Southern Towing Co.*, 714 F.2d 714, 721 (7th Cir.1983). Moreover, Conrail has failed to submit any evidence that it had a contractual relationship with Universal. In an affidavit submitted by Universal, William E. Coughlin, a company vice-president, denies the existence of any contract. Sutherland's affidavit, offered on behalf of Conrail, alleges that an implied warranty was in effect, but lacks the factual support required by Fed.R.Civ.P. 56(e). *E.g., Hackett v. Continental Can Co.*, 518 F.Supp. 1281 (E.D.N.Y.1981). Conrail's request for discovery on this issue is ill founded, since the relevant facts are within its control. Consequently, summary judgment may properly be granted as to Conrail's indemnity claim:

> [P]roperly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation. [citations omitted] Thus, the mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party. The litigant opposing summary judgment, therefore, may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial. Rather, he must bring ... some affirmative indication that his version of the relevant event is not fanciful.

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

Universal's motion for summary judgment is granted with respect to Conrail's claim for indemnity. The motion with respect to Conrail's claim for contribution is denied with leave to renew after discovery. Discovery is to be completed by June 14, 1984 and pretrial orders will be submitted by June 21, 1984.

**IT IS SO ORDERED.**

---

6. This is not to suggest that *Ryan* indemnity was available only when a vessel was held liable without fault. To the contrary, even if a vessel was sued under a negligence standard, *Ryan* indemnity was still available to the vessel. *See Henry v. A/S Ocean*, 512 F.2d 401 (2d Cir.1975).