**Rafael TRIGUERO, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION,
Defendant.**

**CONSOLIDATED RAIL CORPORATION, Third-Party Plaintiff,**

v.

**UNIVERSAL MARITIME SERVICE CORP., Third-Party Defendant.**

**No. 83 Civ. 5717 (RWS).**

United States District Court,
S.D. New York.

Nov. 16, 1984.

---

2. Even without the affidavits, the court would still find that neither Chubb nor Associated issued the insurance policy. The court treats this as an uncontested fact deducible from the policy itself and unchallenged by any of plaintiff's factual allegations.

Grainger & Tesoriero, New York City, for third-party defendant; William E. Bell, New York City, of counsel.

## OPINION

SWEET, District Judge.

This is a renewed motion for summary judgment brought by the third party defendant stevedore Universal Maritime Service Corp. ("Universal"). The motion is granted, and the third party complaint of defendant and third party plaintiff Consolidated Rail Corporation ("Conrail") is dismissed.

### Prior Proceedings

The opinion of May 2, 1984 in this action granted partial summary judgment for Universal dismissing Conrail's claim for indemnity in the event that the plaintiff Rafael Triguero ("Triguero"), Universal's employee, is successful in this tort action against Conrail. 585 F.Supp. 1202. The claim for contribution against Universal remained since the record was inconclusive on the determinative issue of whether Triguero was an employee meeting both the "status" and "situs" tests of 33 U.S.C. § 902(3). Application of § 902(3) at the time of the accident would bar Conrail's action for contribution. Subsequent to the May 2nd opinion, both Conrail and Universal have conducted discovery, and the record demonstrates that Triguero is a statutory "employee."

### Facts

Triguero was injured while at a Conrail facility known as the Portside Container Yard ("Portside") in Port Elizabeth, New Jersey. At the time, Triguero was employed by Universal as a driver of a hustler, a trucklike vehicle used to transport large metal boxes, known as containers, in which cargo is stored. While one of the containers Triguero was moving was being loaded onto the chassis of the hustler, the hustler tipped over, causing the personal injury that is the basis of this suit.

Triguero's function as a hustler driver was to move containers within Universal's

Walker & Bailey, New York City, for defendant and third-party plaintiff; Lawrence R. Bailey, Jr., New York City, of counsel.

facility known as Shed 220 or between Shed 220 and Portside. Shed 220 is a pier and terminal consisting of 95 acres of land with holding areas for cargo, storage areas for equipment, and garage, repair, and office facilities. Shed 220 is designed for the temporary holding of cargo either recently unloaded from overland transportation and awaiting loading onto a vessel, or cargo recently unloaded from overland transportation and awaiting loading onto a vessel, or cargo recently unloaded from a vessel and awaiting overland transportation. At Shed 220 Universal provides the linkage between overland and sea-going transportation.

Portside is the only rail facility in the Port Elizabeth-Port Newark area at which Universal either picks up or discharges containers. In driving from Shed 220 to Portside, a distance of 1¼ miles by road, a driver would use several public roads and go through several intersections. The route between Shed 220 and Portside is dictated by the placement of both Shed 220 and Portside adjacent to the Elizabeth Channel. (*See* exhibit one).

Hustlers such as the one Triguero was driving at the time of the accident are used only to transport containers within Shed 220 or from Portside to Shed 220. The hustlers do not provide overland transportation other than between the rail yard and Shed 220 and within Shed 220 itself, and the hustler cabs are not registered with the State of New Jersey for overland transportation.

At the time Triguero's accident occurred, he was at the Portside facility, having been instructed to pick up two container units at Portside and then deliver the containers to Shed 220, where the containers would be temporarily stored until they were loaded on the liner BARBER NARA, scheduled to arrive in port after the time of the accident.

### Discussion

In order to be an "employee" within § 902(3), a worker must satisfy both the situs and status tests. *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1978). A work-er will satisfy the situs test if he is employed "on navigable waters of the United States (including any adjoining pier, wharf, drydock, terminal, building way, marine railway, or other area customarily used by an employer in loading, unloading, repairing, or building a vessel)." § 903(a). Under the status test a worker must be ". . . engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor worker including a ship repairman, shipbuilder, and shipbreaker." § 902(3). Triguero satisfies both.

### A. The Situs Test

In *Texports Stevedore Co. v. Winchester,* 632 F.2d 504 (5th Cir.1980) the Court held that "[t]he statute does require the injury to occur in an 'adjoining area' . . . To instill in the term its broader meanings is in keeping with the spirit of the congressional purposes. So long as the site is close to or in the vicinity of navigable waters, or in a neighboring area, an employee's injury can come within the [act]." *Id.* at 514. The *Texport* Court consequently found a worker injured in a gear room five blocks from the waterfront to be covered by the situs test. *See Brady-Hamilton Stevedore Co. v. Herron,* 568 F.2d 137 (9th Cir.1978), *Stockman v. John T. Clark & Son of Boston,* 539 F.2d 264 (1st Cir.1976), *cert. denied,* 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1092 (1977).

In the May 2nd opinion, I held that Universal could satisfy the situs test by demonstrating that the Portside terminal, where Triguero was injured, adjoins or is close to navigable water. I also held that three factors could be relevant in determining whether the situs test was satisfied: 1) the suitability of the terminal for maritime activities referred to in the act: 2) whether surrounding properties are devoted to maritime commerce; and 3) whether the site is as close to navigable water as is practicable. Portside satisfies the required criteria: it is across one street from Elizabeth Channel; Portside's essential function is to serve as an interface between overland and ocean transportation; and the surrounding

area is similarly involved with maritime shipping. (*See* exhibit one).

## B. The Status Test

The status test, as defined by the Court of Appeals for the Second Circuit, allows the "application of the [Act] ... to employee[s] whose activities ... bear a significant relationship to navigation or to commerce on navigable waters." *Fusco v. Perini North River Associates*, 622 F.2d 1111, 1113 (2d Cir.1980), *cert. denied*, 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 119 (1981). Moreover, the "language of the 1972 Act is broad and suggests that we should take an expansive view of the extended coverage." *Arbeeny v. McRoberts Protective Agency*, 642 F.2d 672, 674 (2d Cir.), *cert. denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 116 (1981) (security guards injured on pier while protecting a shipment were covered by the Act). As indicated in the May 2nd opinion, since Triguero was injured while transporting containers from Portside to Shed 220 for subsequent shipment aboard an ocean-going vessel, he satisfies the status test.

## Conclusion

Triguero satisfies both the situs and status tests, and he is therefore an employee within § 902(3). Section 905 consequently makes Universal immune from Conrail's action for indemnification, and the third party complaint is dismissed. Discovery on the primary case shall be completed by January 2, 1985 and a joint pretrial order submitted by January 9, 1985.

IT IS SO ORDERED.