**Clifton J. HUMPHRIES, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; Cargill, Incorporated; Commercial Union Insurance Company, Respondents.**

No. 87–2508.

United States Court of Appeals,
Fourth Circuit.

Argued July 1, 1987.

Decided Aug. 28, 1987.

Sidney Harison Kelsey, Jr., Virginia Beach, Va., for petitioner.

Forest Anthony Nester, Washington, D.C. (Seawell, Dalton, Hughes & Timms, Norfolk, Va., on brief) for respondents.

Before PHILLIPS, ERVIN and WILKINSON, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

This appeal challenges the Benefits Review Board's conclusion that a maritime employee's injury did not occur on a maritime situs, so that his injury cannot be compensated under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. The employee also raises various other issues pertaining to the decision by the Board. We conclude that the Board correctly decided that the injury did not fall within the jurisdiction of the Act, and thus affirm without addressing the other issues raised.

I

On December 23, 1974, a car struck and seriously injured petitioner Clifton J. Humphries. At the time of the accident, Humphries, a ship foreman for respondent Cargill, Inc., was working in Chesapeake, Virginia, as a shift foreman on Cargill's second loading shift from 3:30 P.M. to midnight. As one of his job duties as shift foreman, Humphries was required to pick up food for employees working overtime. Cargill imposed this responsibility on the shift foreman as a matter of company policy and on its direct orders in order to prevent interruptions in loading and unloading operations on the later shifts. At approximately 10:00 P.M., Humphries left the Cargill terminal to pick up a meal for one of the overtime workers at a restaurant approximately one and one-half miles

from the loading operation. Humphries picked up the meal but, as he left the restaurant, experienced car trouble. When Humphries left his car to check under the hood, a passing motorist struck him. Humphries suffered severe spinal cord and head injuries.

When Humphries filed a claim for benefits under the LHWCA, Cargill responded with a petition for review and hearing before an Administrative Law Judge (ALJ). After a full evidentiary hearing, the ALJ decided in favor of Humphries on most of the contested issues after ruling that Humphries had fully established jurisdiction under the Act.

Cargill petitioned for review by the Benefits Review Board, challenging the ALJ's decision on jurisdiction, as well as the relief awarded. Humphries cross-appealed on the ALJ's determination of his average weekly wage and the ALJ's disallowance of a portion of his attorney's fee request. The Board reversed the ALJ, concluding that Humphries' injury was not covered under the LHWCA because, at the time of his injury, he was not on a maritime situs. Humphries then petitioned for review of the Board's order and applied for enforcement of the ALJ's order.

## II

Before 1972, LHWCA coverage was determined primarily by the traditional "locality" test of maritime tort jurisdiction. Under this test, the Act covered workers injured on navigable waters, while those injured on adjoining land, pier, or wharf were afforded only state workmen's compensation coverage. A longshoreman moving cargo from ship to pier passed in and out of coverage as he worked.

In 1972, Congress amended the LHWCA to protect "amphibious workers" who moved back and forth from ship to land during their maritime activities. Two amendments to the LHWCA accomplished this purpose. First, Congress extended the Act's coverage landward by including "any adjoining pier, wharf, drydock, terminal, building way, marine railway, *or other adjoining area customarily used by an em-*

*ployer in loading, unloading, repairing, dismantling, or building a vessel.* 33 U.S. C. § 903(a) (emphasis added). This so-called "situs requirement" not only expanded LHWCA coverage spatially but also created potential coverage for many workers whose occupations had never before been covered. Congress therefore added a parallel "status requirement," limiting the landward coverage to those workers "engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, ship builder, and ship-breaker." 33 U.S.C. § 902(3).

While in theory the conjunction of the "status" and "situs" requirements might seem to promise more uniform and predictable coverage, it created new and intractable jurisdictional problems of the sort we encounter in this appeal. In this case, the ALJ found that Humphries was engaged in "maritime employment" at the time of his accident, and thus met the status requirement. While Cargill implies on appeal that procuring a meal for a longshoreman is not really "maritime employment," it never seriously contested Humphries' status before the ALJ or the BRB. In any event, Humphries' "status" does not depend on the specific task he was performing at the time of his injury, *Brady–Hamilton Stevedore Co. v. Herron,* 568 F.2d 137, 140 (9th Cir.1978), and as a shift foreman supervising and facilitating a loading operation Humphries was clearly "engaged in maritime employment."

The difficult question is whether Humphries can also meet the Act's "situs requirement," i.e., whether he was injured in an "adjoining area customarily used by an employer in loading ... a vessel." It is generally settled that a covered situs need not be used exclusively for maritime purposes or be within any specified distance of navigable waters or a "maritime" operation. *Perkins v. Marine Terminals Corp.,* 673 F.2d 1097, 1101–02 (9th Cir.1982). There is, however, no single convincing test for determining just where the geographi-

cal boundaries of coverage under the LHWCA lie.

The Third Circuit, in a case heavily relied on by Humphries, attempted to solve the problem by folding the situs requirement into the status requirement, concluding that so long as the worker is engaged in maritime employment his physical location at the time of his injury is irrelevant. *Sea–Land Service, Inc. v. Director, OWCP,* 540 F.2d 629, 636–39 (3d Cir.1976). This approach to the jurisdictional problem created by the Act offers the advantage of preventing the "checkered coverage" created by an arbitrary geographical test. It also, however, effectively reads the explicit situs requirement out of the Act. The Supreme Court has rejected such "simplifications" of the LHWCA, observing that *both* the status and situs requirements of the Act must be met independently, and that any resulting "curious hole" in coverage is simply a product of Congress's statutory scheme. *See Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 426–27, 105 S.Ct. 1421, 1428–29, 84 L.Ed.2d 406 (1985) (noting, inter alia, that "there will always be a boundary to coverage, and there will always be people who cross it during their employment"). *See also Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).

While the *Sea–Land* approach is unacceptable, any alternative requires a difficult exercise in line drawing. The Fifth Circuit, in an opinion which struggled bravely with the issue, ended up with little more than a litany of factors which are *not* conclusive in a situs determination—absolute contiguity with navigable waters, fence lines, local designations of the area, exclusive use for maritime purposes, and so on. *See Texports Stevedore Co. v. Winchester,* 632 F.2d 504 (5th Cir.1980). The Ninth Circuit, in what at first glance at least seems a more practical approach, proposed four factors for a situs determination: (1) the particular suitability of the site for maritime purposes; (2) whether adjoining properties are devoted primarily to uses in maritime commerce; (3) proximity to the waterway; and (4) whether the adjoining site is as close to the waterway as feasible. *Brady–Hamilton,* 568 F.2d at 141. The Fourth Circuit has addressed the situs issue, but without purporting to offer a comprehensive test. *See Newport News Shipbuilding and Dry Dock Co. v. Graham,* 573 F.2d 167, 169 (4th Cir.1978) (finding jurisdiction when the situs of a worker's injury was an "integral part[ ] of the shipyard" despite the distance of the situs from the waterway).

■ The ALJ made a number of findings of fact on which he premised his jurisdictional conclusions. His conclusion on the situs issue itself, while imbued with "factual" qualities, is essentially a mixed question of law and fact which we, like the Board, can review for errors of law. *See Levins v. Benefits Review Board,* 724 F.2d 4, 6 (1st Cir.1984) (reviewing an ALJ's determination of maritime "status," and noting "that neither this court nor the Board owes special deference to the ALJ with respect to determinations of statutory policy, even though these may be 'fact sensitive' "). We agree with the Board that the ALJ erroneously concluded that Humphries met the situs requirement on the facts of this case.

While the ALJ cited *Sea–Land* to support his conclusion, he at least ostensibly based his decision, as the Act requires, on the character of the area in which the accident occurred rather than Humphries' status at the time of the accident. He observed that the restaurant was located in an area "customarily," though not "primarily," used for significant maritime activities, along a public highway on which various maritime employers maintained terminal facilities. The restaurant itself was several hundred yards from the Elizabeth River. Citing *Texports* as authority, the ALJ noted that "[s]o long as the site is close to or in the vicinity of navigable waters, or in a neighboring area, an employee's injury can come within the Act." *See Texports,* 632 F.2d at 514.

Without venturing to offer a touchstone for all future LHWCA jurisdictional questions, we conclude that these findings by the ALJ do not demonstrate that Humphries was injured on a maritime situs. Humphries' accident occurred well over a mile from the Cargill terminal, along a public highway which did not connect any portions of Cargill's operations or traverse continuous or contiguous terminal areas. The restaurant itself, while arguably located in a "waterfront area," was separated from the Elizabeth River and the nearest maritime terminal by a residential neighborhood. Cargill's workers did not patronize the restaurant because of its proximity to the Elizabeth River and at least one other restaurant was nearer to the Cargill facility. The restaurant was not, as in *Graham,* an "integral part" of the Cargill terminal.

We feel that this combination of circumstances militates against any description of the accident scene as a maritime situs. As the Board aptly noted, the location of Humphries' activities at the time of his injury was "fortuitous," and did not result from "hazards uniquely inherent in the shipyard industry." The LHWCA requires us to draw a spacial line for coverage under the Act. We agree with Humphries that a broad interpretation of the maritime situs requirement is warranted on statutory and policy grounds. *See Texports,* 632 F.2d at 516. Were we to read the situs requirement so broadly as to embrace this claim, however, we would come perilously close to eliminating it entirely.

AFFIRMED.