Rafael TRIGUERO, Plaintiff,

v.

CONSOLIDATED RAIL CORPORATION,
Defendant.

CONSOLIDATED RAIL CORPORATION, Third–Party
Plaintiff–Appellant,

v.

UNIVERSAL MARITIME SERVICE CORPORATION, Third–Party
Defendant–Appellee.

No. 873, Docket 90–7826.

United States Court of Appeals,
Second Circuit.

Argued Jan. 29, 1991.

Decided April 19, 1991.

**96**

Thomas M. Smith, Walker & Bailey, New York City (Lawrence R. Bailey, Jr., of counsel), for third-party plaintiff-appellant.

Celestino Tesoriero, Grainger & Tesoriero, New York City (James M. Leonard, of counsel), for third-party defendant-appellee.

Before KEARSE, PRATT and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Defendant-third-party plaintiff, Consolidated Rail Corporation ("Conrail"), appeals from a judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*), following an order dismissing the third-party

complaint against Universal Maritime Service Corporation ("Universal") upon Universal's motion for summary judgment. 601 F.Supp. 50. The district court held that Universal's injured employee was an "employee" within the meaning of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*,[1] making Universal immune from tort-based contribution once it paid out benefits under the Act. The district court also found that Conrail failed to show there was an implied agreement for indemnification by Universal and, as a consequence, dismissed Conrail's third-party complaint for indemnification. After final judgment, Conrail appealed, arguing that the LHWCA did not apply in this case and, even if it did, Conrail should have been allowed to pursue its third-party claims. Because we agree with the district court, we affirm.

## BACKGROUND

Plaintiff Rafael Triguero worked for third-party defendant-appellee Universal when he was injured on the job in January 1982. Because a precise understanding of Triguero's job is crucial to certain issues on this appeal, we set out the following pertinent facts.

Universal is a stevedoring business. It has a 95–acre dockside facility known as Shed 220 in the port district of Port Elizabeth, New Jersey. Shed 220 provides temporary storage for both incoming and outgoing cargo and, as such, serves as a nexus between maritime and overland transportation. Defendant Conrail runs a rail facility, also within the Port Elizabeth–Port Newark area, known as the Portside Container Yard ("Portside").

Triguero drove a yard hustler which, as described by the district court, "is a truck-like vehicle used to transport large metal boxes with cargo inside, known as containers." Triguero's job was to move cargo within Universal's Shed 220 facility and to shuttle containers between Shed 220 and Portside. On the day of the injury, Triguero was instructed to pick up two containers at Portside and deliver them to Shed 220 where they would remain until being loaded aboard the vessel S.S. BARBER NARA. At some point during the loading operation, the hustler overturned causing the injury for which Triguero brought this action.

Universal is a self-insured employer, and it paid Triguero benefits in accordance with 33 U.S.C. § 901 *et seq.* Triguero brought this suit against Conrail for negligent failure to maintain Portside in a safe and proper condition. Conrail, in turn, filed a third-party complaint against Universal for tort-based contribution and contract-based indemnity. Invoking the protection of the LHWCA, Universal moved to dismiss the third-party complaint or, in the alternative, for summary judgment. Fed.R.Civ.P. 12(b)(6), 56(c). Conrail responded that Triguero was not an "employee" within the meaning of the LHWCA and, even if he was, Conrail still had an implied contract claim against Universal for indemnity.

Because both sides filed supporting affidavits, the district court treated the motion as one for summary judgment. *Grand Union Co. v. Cord Meyer Dev. Corp.*, 735 F.2d 714, 716 (2d Cir.1984). In so doing, the district court concluded that although the "current state of the record strongly suggests that Triguero is an employee," genuine issues of material fact remained concerning Triguero's classification as an employee under the Act. The district court, therefore, denied Universal summary judgment on the tort-based claims, with leave to renew the motion after discovery, reasoning that the protections afforded a benefits-paying employer against further contribution under the Act do not attach unless and until the injured worker can be classified as an employee.

The district court did, however, grant Universal judgment on the related claim for contract-based indemnification. Although conceding there was no express indemnification agreement with Universal, Conrail had argued—irrespective of the

---

1. Effective September 28, 1984 Congress amended the statute, substituting "Longshore" for "Longshoremen's." 33 U.S.C. § 901 (1972), *as amended by* Act of September 28, 1984, Pub.L. No. 98–426, § 27(d)(1), 98 Stat. 1654.

LHWCA's application to the case—that there was an implied warranty of workmanlike performance by Universal and, hence, under this warranty Universal should fully indemnify Conrail for all damages awarded against Conrail. The district court disagreed, finding that Conrail failed to carry its burden of showing an implied warranty. The court also denied Conrail's request for more discovery on the contract issues, reminding Conrail that the relevant facts were within its own control. Discovery continued on the tort-based claim, as already noted.

At the close of discovery, Universal renewed its motion for summary judgment on the tort-based third-party claim for contribution. The court, finding that the well-developed record confirmed its initial assessment, classified Triguero as an LHWCA employee and granted Universal summary judgment. Accordingly, on November 16, 1984, the district court dismissed the third-party complaint. Triguero has since succeeded in his negligence action against Conrail and, with a final judgment entered in the case, Conrail brings this appeal.

On appeal Conrail maintains: (1) that Triguero is not an employee within the meaning of the LHWCA and, consequently, there is no statutory bar to Conrail's attempt to secure contribution from Universal; and (2) regardless of how Triguero is classified under the Act, Conrail should not be foreclosed from recovering against Universal for breach of an implied warranty of workmanlike performance. As to both arguments, Conrail maintains that, at the very least, genuine issues of material fact remain, making the district court's grant of summary judgment inappropriate.

## DISCUSSION

 Mindful that our review of the district court's determination to grant summary judgment is *de novo, EAD Metallurgical, Inc. v. Aetna Casualty & Surety Co.,* 905 F.2d 8, 10 (2d Cir.1990), we consider the record in the light most favorable to Conrail, the non-movant. Even so, we are satisfied that Conrail has failed to meet its burden to establish a genuine issue of material fact. *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177–78 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). We also review whether the law was correctly applied. *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989); *City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 45 (2d Cir.1988) (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2716, at 654 (2d ed. 1983)). We conclude that the district court did apply the law correctly, namely, that Triguero was an LHWCA employee, that application of the LHWCA precludes a third-party claim for contribution against Universal, and that Conrail failed to come forward with any evidence to suggest the existence of an implied agreement for indemnification through a warranty of workmanlike service.

We first examine the broader question of the LHWCA's effect on Conrail's two-part claim for contribution or indemnity. The critical statute is § 905(a) of the Act:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death
>
> . . . .

33 U.S.C. § 905(a). Interpreting this language, this circuit has concluded that once an employer fulfills its obligations under the Act by paying out benefits to the injured LHWCA employee, further tort-based contribution from the employer is foreclosed. *Lopez v. Oldendorf,* 545 F.2d 836 (2d Cir.1976). The § 905(a) exclusivity provision of the LHWCA "immunizes a compensation-paying employer from third party claims for contribution." *Zapico v. Bucyrus–Erie Co.,* 579 F.2d 714, 717 (2d Cir.1978); *Lopez,* 545 F.2d at 839–40 ("In-

asmuch as [LHWCA employer] furnished its employee ... with the benefits required by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., it is not subject to a claim for contribution."), *cert. denied,* 431 U.S. 938, 97 S.Ct. 2650, 53 L.Ed.2d 256 (1977); *see also Ketchum v. Gulf Oil Corp.,* 798 F.2d 159, 161 (5th Cir.1986) (including this court among the circuits that interpret § 905(a) to abrogate independent tort liability of the employer to its employees); *Drake v. Raymark Indus., Inc.,* 772 F.2d 1007, 1021 (1st Cir.1985), *cert. denied,* 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986); T. Schoenbaum, Admiralty and Maritime Law § 6–14, 233 (1987) ("Non-vessel third parties also may not maintain actions for tort-based indemnity or contribution against the employer" because such actions are barred by 33 U.S.C. § 905(a)).

Conrail's claim for (implied) contract-based indemnity against Universal, is not so easily disposed of.[2] This circuit has recognized that a third-party action for contractual indemnity is not barred by the exclusivity provision of section 905(a). *Zapico,* 579 F.2d at 721–22. The rationale, anchored in Supreme Court precedent, is that an employer's liability for contractual indemnity:

> springs from an independent contractual right. It is not an action by or on behalf of the employee and it is not one to recover damages "on account of" an employee's "injury or death." It is a simple action to recover, under a voluntary and self-sufficient contract....

*Id.* at 719 (quoting *Ryan Stevedoring Co. v. Pan–Atlantic S.S. Corp.,* 350 U.S. 124, 130, 76 S.Ct. 232, 235, 100 L.Ed. 133 (1956)).

If Triguero is an employee within the meaning of the Act, the statute and the case law compel three conclusions: (1) § 905(a) shields Universal, as a benefits-paying employer, from all further tort-based liability to Triguero; (2) Conrail's third-party claims against Universal for tort-based contribution would therefore fail as a matter of case law; and (3) regardless of the LHWCA, however, on the reasoning of *Zapico, supra,* Conrail may still recover against Universal for the breach of a contractual duty to indemnify, if such a duty is found to exist.

## I. *Triguero as Employee*

With exceptions not here relevant, an employee for purposes of the LHWCA is defined in § 902(3) of the Act:

> The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker....

Under the Supreme Court's decision in *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), in order to determine whether a person is an employee under the LHWCA, the court must look to what job the injured person was performing (the "status test") and where the injury occurred (the "situs test"). *Id.* at 265, 97 S.Ct. at 2357.

### A. *Status*

Workers are engaged in maritime employment when they are "involved in the essential elements of unloading a vessel." *Caputo,* 432 U.S. at 267, 97 S.Ct. at 2358. Accordingly, being near a vessel, of itself, is insufficient to make a person an employee when he is not engaged in the overall loading and unloading of vessel cargo. It has been held, for example, that the usual truck driver who merely makes waterfront pick-ups or deliveries falls outside the Act, as do clerical workers uninvolved with the handling of cargo. *Id.* At the same time, *Caputo* cautions that the statutory language of the Act, as amended in 1972, is "broad and suggests that we should take an expansive view of the extended coverage. Indeed, such a construction is appropriate for this remedial legislation." 432 U.S. at 268, 97 S.Ct. at 2359.

---

**2.** If Conrail were a vessel, the Act by its own terms would disallow any third-party action against the benefits-paying employer, including one sounding in contract. 33 U.S.C. § 905(b). Conrail, however, is quite obviously not a vessel, 1 U.S.C. § 3.

"In adopting an occupational test that focuses on loading and unloading, Congress anticipated that some persons who work only on land would receive benefits under the 1972 Act." *P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 80, 100 S.Ct. 328, 335, 62 L.Ed.2d 225 (1979). In fact, the Act has been extended to workers who move cargo between ship and land transportation. *Id.* at 84, 100 S.Ct. at 338; *see Chesapeake and Ohio Railway Co. v. Schwalb,* 493 U.S. 40, 110 S.Ct. 381, 107 L.Ed.2d 278 (1989) (railroad employee fixing loading machinery, though considered traditional railroad work which could be done anywhere, was an employee under the Act when repairs done on the waterfront because that repair was essential to the overall loading process); *see also Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 420, 105 S.Ct. 1421, 1425, 84 L.Ed.2d 406 (1985).

Since *Pfeiffer,* this circuit has interpreted "the status test to 'preclud[e] any application of the LHWCA ... to an employee whose activities do not bear a significant relationship to navigation or to commerce on navigable waters.'" *McCarthy v. The Bark Peking,* 676 F.2d 42, 45 (2d Cir.1982) (quoting *Fusco v. Perini N. River Assoc.,* 622 F.2d 1111, 1113 (2d Cir.1980), *cert. denied,* 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 119 (1981)), *vacated on other grounds,* 459 U.S. 1166, 103 S.Ct. 809, 74 L.Ed.2d 1010 (1983). We have, however, determined that pier guards satisfy the status requirement when they are protecting cargo on a pier. *Arbeeny v. McRoberts Protective Agency,* 642 F.2d 672 (2d Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 116 (1981). Although security guards are not designated as longshore workers and do not physically on-load or off-load cargo, their function, nonetheless, is "essential to the longshoring operation." *Id.* at 675. We are satisfied that Triguero met the statutory status requirement for the same reasons we concluded that security guards did.

Conrail continually characterizes Triguero as a truck driver; it emphasizes that Triguero travels 1¼ miles, including stretches of public road, when transporting containers between Portside and Shed 220. The fact remains, however, that Triguero's hustler is not a registered vehicle for travel over public roads in New Jersey, though it is permitted to travel those portions of public road necessary to reach Portside. Although not dispositive, *Arbeeny,* 642 F.2d at 675, Triguero classifies himself as a longshoreman and is a member of the International Longshoremen's Association. Quite simply, as a hustler driver, we find Triguero playing the requisite integral role in the loading of cargo. *See Pfeiffer,* 444 U.S. at 71–72, 100 S.Ct. at 331–332 (cotton header responsible for unloading cotton from dray wagon to pier warehouse deemed engaged in maritime employment); *see also Atlantic Container Service, Inc. v. Coleman,* 904 F.2d 611, 618 (11th Cir. 1990) ("Similarly, hustlers and containers, both of which [employee repairman] worked on periodically, are essential to the loading and unloading process," drawing such employee within the ambit of the LHWCA).

### B. *Situs*

Congress deliberately set out to march from the sea landward by including employee injuries that occur on "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, ... a vessel." 33 U.S.C. § 903(a). It is generally understood "that a covered situs need not be used exclusively for maritime purposes or be within any specified distance of navigable waters or a 'maritime' operation." *Humphries v. Director, Office of Workers Compensation Programs,* 834 F.2d 372, 373 (4th Cir.1987) (citing *Perkins v. Marine Terminals Corp.,* 673 F.2d 1097, 1101–02 (9th Cir.1982)), *cert. denied,* 485 U.S. 1028, 108 S.Ct. 1585, 99 L.Ed.2d 900 (1988).

The Ninth Circuit has identified four factors in deciding whether to apply the Act to a particular situs: (1) the suitability of the site for LHWCA maritime purposes; (2) whether adjoining properties are devoted primarily to uses in maritime commerce; (3) proximity to the waterway; and (4) whether, given all circumstances, the

adjoining site is as close to the waterway as feasible. *Brady–Hamilton Stevedore Co. v. Herron,* 568 F.2d 137, 141 (9th Cir. 1978); *see Texports Stevedore Co. v. Winchester,* 632 F.2d 504 (5th Cir.1980) (a worker in a gear room five blocks from dockside satisfies the situs test), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981). Still other circuits have applied the Act when the situs of the injury is an "integral part[ ] of the shipyard" despite the distance of the situs from the waterway. *See, e.g., Newport News Shipbuilding and Dry Dock Co. v. Graham,* 573 F.2d 167, 169 (4th Cir.), *cert. denied,* 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978).

■ Neither side disputes that Triguero satisfied the situs requirement when he drove within Shed 220. The question is whether his hustler's journey to Portside, the place of the injury, took him beyond the pale of the Act. We conclude it did not.

The 1¼ mile journey to Portside, a journey that is more around the Elizabeth Channel than away from it, is a necessary trip and is, therefore, integral to the loading of cargo. Limited travel along public roads is unavoidable, dictated by the accident of geography and, consequently, not dispositive. In that regard, we are mindful of the "congressional intent to reduce the importance of situs as applied to employees who might otherwise be covered for only a part of their work." *Cove Tankers Corp. v. United Ship Repair, Inc.,* 683 F.2d 38, 42 (2d Cir.1982); *see Pfeiffer,* 444 U.S. at 83 n. 18, 100 S.Ct. at 337 n. 18 ("Congress was especially concerned that some workers might walk in and walk out of coverage."); *see also Humphries,* 834 F.2d at 375 ("a broad interpretation of the maritime situs requirement is warranted on statutory and policy grounds"). We conclude, therefore, that Triguero was an employee within the meaning of the Act when he was injured, that the LHWCA therefore applies, and that Conrail therefore has no tort-based claims for contribution or indemnity from Universal.

## II. *Contractual Indemnification*

■ It is agreed that there is no express agreement by Universal to indemnify Conrail. Conrail claims instead that Universal breached an implied warranty of workmanlike performance.

Conrail, "has the heavy burden of finding an implied agreement by the stevedore [Universal] to indemnify it. As we have already indicated, only contract-based indemnity could overcome the 'on account of' language of § 905(a)." *Zapico,* 579 F.2d at 722. We know, too, that indemnity "is an all-or-nothing approach that should be applied sparingly and purposefully by the law." T. Schoenbaum, Admiralty and Maritime Law § 4–15, at 151 (1987) (concluding that indemnity is best left "for the parties to negotiate as part of their overall business relationship").

While this court held in *Zapico* that a non-vessel's contractual claim for indemnity might lie against an LHWCA employer based upon breach of an implied warranty of workmanlike performance, it is not without significance that we then concluded that the manufacturer of a defective loading crane could not claim to be the third-party beneficiary of a warranty running between the stevedore (the LHWCA employer using the crane) and the vessel, such implied warranty arising out of the stevedore-vessel contractual relationship. Our *Zapico* conclusion was based, in part, on the recognition that "there is simply not enough of a nexus to imply an agreement ... to indemnify" the manufacturer. 579 F.2d at 723.

To distinguish its situation, Conrail cites *Gould v. General Mills, Inc.,* 411 F.Supp. 1181 (W.D.N.Y.1976). That case, decided without the benefit of our decision in *Zapico,* is distinguishable. The record here does not reflect the same relationship or contract-based duties evident in *Gould,* and absent that relationship, Conrail has no peg on which to hang its indemnity claim. *See, e.g., Nieves v. Douglas Steamship, Ltd.,* 451 F.Supp. 407, 411 (S.D.N.Y.1978); *see also Travis v. International Multifoods Corp.,* 464 F.Supp. 503, 508 (W.D.N.Y. 1978). The nature of the third-party rela-

tionship is, of course, crucial because it determines whether the nexus is sufficient to imply an agreement for indemnity. *Zapico*, 579 F.2d at 723; *Nieves*, 451 F.Supp. at 410 ("facts indicating the nature and scope of the business of or relationship between the third parties ... are necessary in order that an informed determination relating to any implied obligation may be made"); *see Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir.1986) ("There is simply nothing in [the grain sale agreements] or in the parties' dealings from which an agreement to indemnify could 'fairly be implied'.") (quoting *Zapico*, 579 F.2d at 719); *Pippen v. Shell Oil Co.*, 661 F.2d 378, 388 (5th Cir.1981) (company which leased vessel for oil drilling failed to show implied warranty with wireline employer who provided specialized drilling services under contract with vessel); *In re General Dynamics Asbestos Cases*, 539 F.Supp. 1106, 1110–12 (D.Conn.1982) (vendor/vendee contractual relationship creates no implied agreement by the buyer to indemnify the seller for injuries resulting from product use); *but see Inland Oil & Transport Co. v. Mt. Vernon*, 624 F.Supp. 122, 126 (S.D.Ind. 1985) (special status of "municipality" in contract relationship with stevedore employer-licensee sufficient to imply contract of indemnity).

Conrail alleges merely that Triguero, as instructed by Universal, arrived at Portside with his hustler and a dock receipt to pick up two containers. Triguero was not obligated, or presumably even allowed, to operate Conrail's equipment pursuant to a Conrail–Universal contract for unloading, or to participate in any other close relationship out of which implied indemnity characteristically grows. On these facts, we find that Conrail has failed to carry its heavy burden to show "a relationship ... from which a covenant to indemnify could fairly be implied." *Zapico*, 579 F.2d at 719.

## CONCLUSION

Because Triguero is an LHWCA employee who received statutory compensation from Universal, § 905(a) protects Universal from the contribution claims alleged in the third-party complaint. In addition, Conrail has failed to show a relationship sufficient to imply a covenant to indemnify. Accordingly, the judgment of the district court is affirmed.