Salvatore **ERCOLE** and Maria Ercole, Plaintiffs,

v.

**K/S DIFKO XLIII KODIF XLIII A.P.S., Steamship Company AF 1912, Steamship Company of Svendborg, Defendants.**

No. 91–CV–1524.

United States District Court, E.D. New York.

May 8, 1992.

As Amended June 24, 1992.

---

**10.** However, the Government should voluntarily provide such a list prior to jury selection, as stated in their papers.

Zimmerman & Zimmerman, New York City (Martin Lasoff, Morris Cizner, Irving Kernis, of counsel), for plaintiffs.

Freehill, Hogan & Mahar, New York City (Mark F. Muller, of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

### Background

On August 13, 1989, plaintiff Salvatore Ercole, a lasher employed by A.G. Ship Maintenance Corp., slipped and fell while working on a hatch cover of the vessel McKinney Maersk, which was docked at Port Newark, New Jersey. The McKinney Maersk is owned by defendant K/S Difko XLIII Kodif XLIII A.p.S., and was bareboat chartered at that time to defendants Steamship Company AF 1912 and Steamship Company of Svendborg. The plaintiff alleges that he slipped on a spot of grease and rainwater located near one of the approximately 2000 turnbuckles permanently bolted to the vessel. Both parties agree that turnbuckles, which are like large threaded screws from which lashings are secured, must be greased to function properly. The plaintiff contends that the grease upon which he slipped dripped from a turnbuckle onto the hatch cover, and that the defendants were consequently negligent in providing safe working conditions aboard the vessel. The accident occurred under rainy conditions approximately 29½ hours after the stevedores and lashers began loading and unloading cargo containers on and off the vessel. The defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56(c).

### Choice of Law

Before turning to the merits of the defendants' motion for summary judgment,

the Court must resolve a dispute concerning choice of law. The plaintiff filed a diversity complaint pursuant to 28 U.S.C. § 1332. The plaintiff asserts that New York negligence law applies because the lasher's employer, A.G. Ship Maintenance Corp., was hired by the stevedores, and not the vessel. The existence of privity of contract between the plaintiff's employer and the vessel is irrelevant to choice of law analysis under these circumstances. Rather, the determinative test is whether the wrong (1) occurred on navigable waters and (2) "bear[s] a significant relationship to traditional maritime activity." *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864, 106 S.Ct. 2295, 2298, 90 L.Ed.2d 865 (1986) (internal quotations omitted). The plaintiff was injured while engaging in the traditional maritime activity of loading and unloading a vessel floating in the navigable waters of the United States. Consequently, "the legal rights and liabilities arising from that conduct ... [are] ... within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law...." despite the plaintiff's election to proceed in a federal forum on the basis of diversity of citizenship. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550 (1958); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409–11, 74 S.Ct. 202, 204–06, 98 L.Ed. 143 (1953); *accord Capozziello v. Brasileiro*, 443 F.2d 1155, 1157 (2d Cir.1971).

The defendants contend that the Longshore and Harbor Workers' Compensation Act ("Longshore Act"), codified at 33 U.S.C. § 901 *et seq.*, sets forth the exclusive remedy available to the plaintiff under the maritime law. The Longshore Act "provides compensation for the death or disability of any person engaged in 'maritime employment,' § 902(3), if the disability or death results from an injury incurred upon the navigable waters of the United States or any adjoining pier or other area customarily used by an employer in loading, unloading, repairing, or building a vessel, § 903(a)." *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 415–16, 105 S.Ct. 1421, 1423, 84 L.Ed.2d 406 (1984). When a "cov-

ered person" sues a vessel for negligence, the Longshore Act states that it is an "exclusive" remedy. 33 U.S.C. § 905(b); *see Masinter v. Tenneco Oil Co.*, 867 F.2d 892, 896 (5th Cir.1989); *compare East River S.S. Corp.*, 476 U.S. at 864, 106 S.Ct. at 2298 ("[a]bsent a relevant statute, the general maritime law, as developed by the judiciary, applies").

The requirements for applicability of the Longshore Act are categorized into a two-part "status" and "situs" test. *Herb's Welding*, 470 U.S. at 415–16, 105 S.Ct. at 1423; *accord Triguero v. Consolidated Rail Corp.*, 932 F.2d 95, 99 (2d Cir.1991). Under the status test, a worker is engaged in maritime employment when he is "involved in the essential elements of unloading a vessel." *Triguero*, 932 F.2d at 99 (internal quotations omitted). The job of a lasher is to loosen or tighten the lashings of sea containers so that they can be removed from or loaded onto the deck of the vessel by longshoremen. There can be no dispute that the status test is satisfied because the plaintiff lasher was engaged in maritime employment at the time and place of his injury. Under the situs test, the injury must occur at a location "integral" to the activity of loading or unloading a vessel. *Triguero*, 932 F.2d at 100–01. There can be no dispute that the situs test is satisfied because the plaintiff's injuries occurred on the hatch cover of the vessel. Consequently, the Court finds that the vessel negligence provision of the Longshore Act is the controlling law in this case.

### Summary Judgment

Summary judgment is proper only when it appears plain from the record that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 571–73 (2d Cir.1991). The function of the district court in a summary judgment motion is to determine whether there are any genuine issues for trial while resolving all ambiguities and doubtful inferences against the moving party.

*Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

The defendants argue that there is no genuine issue of fact that the spot of grease on which the plaintiff slipped developed just minutes before the plaintiff slipped on it. They contend that the plaintiff slipped near the turnbuckle where his partner had worked moments before without slipping. The defendants conclude from this observation that the grease must have dripped onto the hatch cover from the turnbuckle during the intervening time period. The dangerous condition having developed some 29½ hours after the defendants' duty terminated under 33 U.S.C. § 905(b) to turn over a reasonably safe vessel to the longshore and harbor workers, they assert that the danger created by the grease spot could not have been known to them and can create no vessel owner liability. *See Kakavas v. Flota Oceanica Brasileira, S.A.,* 789 F.2d 112, 118–19 (2d Cir.1986), *cert. denied* 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986).

■ This interpretation of the facts is subject to genuine dispute. The plaintiff's deposition does not indicate that the plaintiff slipped in exactly the same spot on the hatch cover where his partner had worked without incident. Pl.'s Dep. at 48–50. Rather, the deposition indicates only that the plaintiff slipped in proximity to the turnbuckle which his partner had just finished tightening. *Id.* Given this ambiguity in the record, defendants cannot properly draw the conclusion that the plaintiff slipped in a location where moments before there had been no grease. Much to the contrary, the plaintiff stated that when visibility on the rainy deck permitted, he could see grease spots on the deck and hatch cover of the vessel. *Id.* at 51–53. The dispute over when and where, if at all, a dangerous condition was created is material to a 33 U.S.C. § 905(b) action. *Kakavas,* 789 F.2d at 118–19. This dispute is a question for a jury to resolve when, as here, facts presented by the moving party are subject to ambiguous inferences. *Knight,* 804 F.2d at 11.

The court has considered carefully the merits of the defendants' motion, and for the reasons stated above, it is hereby DENIED.

SO ORDERED.