**Filippo BELLOMO, Plaintiff,**

**v.**

**UNITED ARAB SHIPPING CO. (S.A.G.), Defendant.**

**No. CV–91–2776 (DRH).**

United States District Court, E.D. New York.

Sept. 21, 1994.

---

Bert Taras, P.C. by Norman E. Frowley, West Hempstead, NY, for plaintiff.

Kirlin, Campbell, Meadows & Keating by Cary R. Wiener, New York City, for defendant.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Plaintiff Filippo Bellomo brings this action under the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 905, seeking relief for injuries allegedly caused by the negligence of Defendant United Arab Shipping Company. Currently before the Court is Defendant's motion for summary judgment. Because the Court finds that there is a genuine issue of material fact as to whether Defendant breached a duty of care to Plaintiff, Defendant's motion for summary judgment is denied.

## BACKGROUND

On January 21, 1991, Plaintiff Filippo Bellomo was employed as a longshore worker by Universal Maritime Service Corporation (the "stevedore") and was discharging cargo from the M/V ALWATTYAH, a ship owned by United Arab Shipping Company. Plaintiff was assigned to remove lashing pins from cargo containers located on the deck of the vessel. After removing a pin from the top of a container, Plaintiff descended to the snow-covered deck beneath him. (Pl.'s Dep. at 58). Upon stepping down into the snow, Plaintiff claims that he lost his foothold because of an underlying sheet of ice. (Pl.'s Dep. at 58.) As a result of his fall, Plaintiff claims he sustained injuries to his right shoulder and elbow.

## DISCUSSION

I. *Standard for Granting Summary Judgment*

A motion for summary judgment may be granted only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987); *Winant v. Carefree Pools,* 709 F.Supp. 57, 59 (E.D.N.Y.), *aff'd,* 891 F.2d 278 (2d Cir.1989). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also Trebor Sportswear Co. Inc. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989); *Pariente v. Scott Meredith Literary Agency, Inc.,* 771 F.Supp. 609, 612 (S.D.N.Y.1991).

■ Once the moving party has come forward with support—including pleadings, depositions, interrogatory answers, and affidavits—demonstrating that no genuine issue of material fact remains to be tried, the burden shifts to the non-moving party to provide similar support setting forth specific facts about which a genuine triable issue remains. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Borthwick v. First Georgetown Securities, Inc.,* 892 F.2d 178, 181 (2d Cir.1989); *Donahue,* 834 F.2d at 57. "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509. The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ Moreover, "[c]onclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evi-

dence,' and more than 'some metaphysical doubt as to material facts.'" *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)); *see also Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting *Borthwick,* 892 F.2d at 181, and *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)). Finally, the court must resolve all reasonable inferences in favor of the non-moving party. *Donahue,* 834 F.2d at 57. With these principles in mind, the court turns to a discussion of the case at bar.

II. *Shipowner's Duty of Care to Longshore Workers*

■ The 1972 Amendments to the Longshore and Harbor Workers Compensation Act, 33 U.S.C. §§ 901–50, provide that longshore workers may recover damages from a shipowner for injuries caused by the shipowner's negligence. 33 U.S.C. § 905(b).[1] Because Congress did not specify the acts or omissions of the shipowner that would constitute negligence, the contours of a shipowner's duty to longshore workers are left to be resolved through the application of accepted principles of tort law and the ordinary process of litigation. *Howlett v. Birkdale Shipping Co., S.A.,* — U.S. —, —, 114 S.Ct. 2057, 2063, 129 L.Ed.2d 78 (1994).

■ Applying the principles of tort law in the context of stevedoring operations, the Supreme Court has explained that shipown-

1. This section provides, in relevant part, that "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel. . . . The liability of

the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred."
33 U.S.C. § 905(b).

ers owe three distinct duties of care to long-shore workers. *Id.; Scindia Steam Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 167, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981). The first duty, commonly called the "turnover duty," relates to the condition of the ship upon the commencement of stevedoring operations. *Howlett,* —— U.S. at ——, 114 S.Ct. at 2063 (citing *Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622). "The second duty, applicable once stevedoring operations have begun, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of the vessel.'" *Id.* (quoting *Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622). The third duty, commonly called the "duty to intervene," concerns the shipowner's obligations with regard to cargo operations in areas under the principal control of the stevedore. *Id.* (quoting *Scindia,* 451 U.S. at 167–78, 101 S.Ct. at 1622–27).

### III. *The "Turnover Duty"*

■■■ On this motion for summary judgment, the Court begins by considering whether there is a genuine issue of material fact with respect to the first of these duties, the "turnover duty." This duty requires the shipowner to "turn over" its vessel to the stevedore in "'such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should expect to encounter, arising from the ship's service or otherwise, will be able by the exercise of ordinary care,' to carry on cargo operations 'with reasonable safety to persons and property.'" *Howlett,* —— U.S. at ——, 114 S.Ct. at 2063 (quoting *Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 416–17 n. 18, 89 S.Ct. 1144, 1152, 22 L.Ed.2d 371 (1969)). Thus, the shipowner has a duty to warn longshore workers of "latent hazards that 'are known to the vessel or should be known to it in the exercise of reasonable care.'" *Id.* at ——, 114 S.Ct. at 2064 (quoting *Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622). "Latent hazards" are "defined in this context as hazards that would be neither obvious to nor anticipated by a competent

stevedore in the ordinary course of cargo operations." *Id.*

■■■ In its motion for summary judgment, Defendant initially contends that there was no dangerous condition on the ship when it was turned over to the stevedoring company. Defendant alleges that no ice had formed on the deck of the ship at the time of turnover, and, therefore, the ship was delivered to the stevedoring company in a reasonably safe condition. (Def.'s Reply Mem. at 6–15.)

In support of its position, Defendant relies upon certain climatological data that was recorded at Newark International Airport. The airport is located approximately one mile inland from Port Newark, the port where the ship was docked. Defendant submits that this data establishes that the ambient air temperature was not at or below the freezing point prior to turnover of the ship at 8:00 AM.[2] (Def.'s Mem. Support Ex. B; Def.'s Reply Mem. at 6–11.) Defendant thus concludes that, at the time of turnover, the ship was free from the ice that allegedly caused Plaintiff's injuries.

Plaintiff's deposition, however, indicates that snow was falling in the area as early as 6:30 AM. (Pl.'s Dep. at 33.) Moreover, Plaintiff testified that when he boarded the ship at approximately 8:10 AM, the deck was covered with freshly fallen snow. (*Id.* at 31.) Plaintiff contends that "[f]rom this evidence it may be concluded that the ice underneath the newly fallen snow was present at the commencement of cargo operations...." (Pl.'s Opp. Mem. at 17.)

Resolving all reasonable inferences in favor of Plaintiff, as this Court is required to do, *see Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987), the Court cannot find, as a matter of law, that the deck was free of ice at the time of turnover. The weather reports relied upon by Defendant, which were recorded one mile inland from the port, do not provide conclusive evidence of the prevailing climatological conditions, *see Celanese Corp. of America v. Vandalia Warehouse Corp.,* 424 F.2d 1176,

---

**2.** Plaintiff contends that the shipowner turned over the vessel at 8:00 AM (Pl.'s Opp. Mem. at 3), and, for purposes of this motion, Defendant agrees. (Def.'s Reply Mem. at 7.)

1178–79 (7th Cir.1970), especially in light of Plaintiff's account of the conditions as he boarded the ship. Thus, the Court finds that there is a genuine issue of fact with respect to the time of formation of the ice, and that the time of formation is a material fact. *See Ercole v. K/S Difko XLIII Kodif XLIII A.p.S.*, 793 F.Supp. 61, 64 (E.D.N.Y.1992) ("The dispute over when and where, if at all, a dangerous condition was created is material to a 33 U.S.C. § 905(b) action.") (citing *Kakavas v. Flota Oceanica Brasileira, S.A.*, 789 F.2d 112, 118–119 (2d Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986)).

In the alternative, Defendant suggests that, even if ice had formed prior to turnover, it was not negligent, for the presence of ice would not prevent the longshore workers from carrying on cargo operations with reasonable safety. (*See* Def.'s Reply Mem. at 18–20.) In support of its position, Defendant first contends that the presence of the ice is a condition that is "obvious" to the stevedore and is a "normal hazard of longshoring." (*See* Def.'s Mem. Support at 30; Def.'s Reply Mem. at 18.)

In response, Plaintiff contends that he was unable to see the ice on the deck of the ship because it was covered by newly fallen snow. (Pl.'s Dep. at 117.) Moreover, Plaintiff indicated that although he was able to avoid or adjust for certain obvious slippery conditions on board the ship, he was unable to navigate the ice. (*See id.* at 115–17.) Based upon this testimony, the Court finds that there is a material issue of fact as to whether the icy condition presented a "latent hazard."[3] *See Howlett*, —— U.S. at ——, 114 S.Ct. at 2064.

Defendant also contends that it cannot be liable as a matter of law, for there is no evidence to suggest that "under the prevailing weather conditions, defendant shipowner either knew or should have known of the presence of 'hidden ice' under the snow." (Def.'s Reply Mem. at 20.) On the contrary, however, Plaintiff indicated at his deposition that, throughout the morning, individuals who appeared to be members of the ship's crew were sweeping the deck with brooms. Resolving all reasonable inferences in favor of Plaintiff as non-movant, the Court finds that there is a material issue of fact as to whether the shipowner was aware of the hidden ice, in light of the efforts of the crew members to clear the areas in which the longshore workers were operating.

The Court thus finds that there are material issues of fact as to whether Defendant breached its turnover duty.[4]

### CONCLUSION

For the reasons set forth above, the Court finds that there are material issues of fact with respect to Defendant's liability in this case, and, therefore, Defendant's motion for summary judgment is denied.

SO ORDERED.

3. The cases cited by Defendant do not persuade this Court to reach a contrary result. While it is true that, in certain cases, courts have found that ice is an obvious, rather than "latent" danger, *see e.g., Davis v. Portline Transportes Maritime Int'l*, No. Civ. A 92–0096, 1993 WL 101202 (E.D.Pa. Apr. 6, 1993), *aff'd in relevant part*, 16 F.3d 532 (3d Cir.1994); *LaMartina v. Pan Ocean Shipping Co., Ltd.*, 815 F.Supp. 878 (D.Md.1992); *Mitchell v. Sea–Land Svcs., Inc.*, Civ. No. S 84–4052, 1987 WL 16284 (D.Md. Jan. 12, 1987), the inquiry into whether a danger is obvious is fact-specific, and none of the cases cited by Defendants suggest that ice is an obvious hazard as a matter of law.

4. Because the Court has determined that there are material issues of fact with respect to the "turnover duty" of the shipowner, and as it appears that substantially the same evidence would be admitted with respect to each of Defendant's duties, the Court declines to consider whether the shipowner may also be liable for a breach of its duty to intervene or to use reasonable care in areas under its active control. The Court notes, however, that it is not clear whether Plaintiff contends that there are material issues of fact with respect to these latter two duties. In the pre-trial order, Plaintiff should clearly indicate its position in this regard.